NATIONAL LIFE & ACCIDENT INS. CO. v. WEAVER. (No. 8426.)

(Court of Civil Appeals of Texas. Dallas. Dec. 18, 1920.)

1. Insurance ⬅668(11)—Evidence held sufficient to carry to jury question whether disability was solely the result of accident.

In an action a policy insuring against loss of time resulting from accidental bodily injury or from disease or illness common to both sexes, evidence *held* sufficient to carry to the jury the question whether the insured's disability resulted solely from accident and not from disease.

2. Trial ⬅139(1)—Case will not be taken from jury simply because the evidence preponderates in favor of one of the parties.

The court will not take a case from the jury and direct a verdict for defendant merely because the evidence preponderates, or greatly preponderates, in favor of defendant.

3. Insurance ⬅454—Salpingitis held "disease common to both sexes" within health policy.

Within the terms of a health policy insuring against loss of time from disease or illness common to both sexes, a disease is common to both sexes unless one sex is immune therefrom, and the disease known as salpingitis, which is sort of an inflammation, is deemed a disease common to both sexes, as males are not immune, though it attacked insured a woman in her genital organs.

4. Appeal and error ⬅930(3)—Presumption that issue not submitted was determined in favor of the successful party.

In an action on an accident and health policy insuring against loss of time from accidental injuries and from illness common to both sexes, where there was evidence from which a court or jury could have found that the disease with which insured was afflicted was common to both sexes, it will be presumed under the statute, where that issue was not submitted and no request was made for its submission, that it was determined by the court in favor of the insured, the successful party below.

Appeal from Dallas County Court; W. L. Thornton, Judge.

Action in justice court by Mrs. Wrenda Weaver against the National Life & Accident Insurance Company. From a judgment for plaintiff, defendant appealed to the county court, where plaintiff had judgment, and defendant appealed. Affirmed.

Read, Lowrance & Bates, of Dallas, for appellant.

Thompson, Knight, Baker & Harris and Marshall Thomas, all of Dallas, for appellee.

TALBOT, J. This suit was brought by appellee against appellant in the justice court of Dallas county, claiming indemnity for disability from accident for 15 weeks at $10 per week, under an insurance policy issued by appellant to appellee, and also claiming statutory damages in the amount of $12 and attorney's fee in the sum of $25, a total demand of $193. The appellant denied liability because the disability of the appellee resulted partly from a disease not common to both sexes, and was not wholly the result of the accident which, it was claimed, relieved the appellant of any liability under the express provisions of the policy. Judgment was rendered in the justice court in favor of appellee against appellant for $54.80. From this judgment appellant appealed to the county court. On trial in the county court, the case was submitted to the jury on special issues which were answered favorably to appellee, and the court entered judgment against appellant in favor of appellee for $193. Appellant filed a motion for new trial, which was overruled by the court, whereupon appellant gave notice of appeal in open court to this court, and the appeal was perfected.

The contention of the appellant is that the uncontradicted evidence shows a state of facts which preclude a recovery by the appellee, and that judgment should have been rendered in its favor; that it conclusively appears that the policy of insurance sued upon insured the plaintiff only against loss of time resulting either directly and independently of all other causes from a bodily injury which is effected accidentally and through violent and external means or from bodily disease or illness which is common to both sexes, and not venereal in character; that the policy also provides that the company will pay indemnity for the period of disability immediately following the accident during which the insured is wholly disabled and prevented solely by such injury from following her business; and it also provides that this policy shall not cover any disease not common to both sexes; that the testimony of Dr. O. M. Marchman, who was called to attend the insured the day following her alleged injury, was to the effect that he found her suffering with salpingitis of both tubes and ovaries, and that from that day on until his last visit to her her disability never did result solely from the accident,

but was contributed to by the salpingitis, and that her disability resulted partly from that disease up to May 25, 1918, the day he gave his deposition in the case, and that her disability resulted mostly from the disease, and that on the day of his last visit to her on March 27, 1917, her confinement was the result solely of the disease; that this testimony was not contradicted, and there was no evidence adduced on the trial on which the jury could base its finding that the plaintiff's disability did not result partly from salpingitis, and there was no evidence to sustain the finding of the jury in response to the first special issue that the plaintiff was wholly disabled and prevented by the injury from performing any and every duty pertaining to her business or occupation for 18 weeks.

[1] The policy of insurance contained provisions substantially as recited in the foregoing contention of the appellant, but we do not concur in appellant's view of the evidence. On the contrary, a close examination of all the evidence in the case leads us to the conclusion that it was not conclusive upon the issue raised, as is claimed by appellant, but was sufficient to sustain the finding of the jury that appellee "was wholly disabled and prevented as a proximate result of the accident in question from performing any and every duty pertaining to her business, or any other occupation for wages or profit." The testimony of Dr. Marchman, standing alone, would perhaps sustain the view expressed by appellant, but the version of appellee and her daughter as to the cause, nature, and extent of her injuries and suffering precludes, we think, a holding as a matter of law that the appellee was not disabled and prevented, within the contemplation of the terms of the insurance policy, as a result of the accident alleged, from performing the duties pertaining to her business or occupation. The appellee testified, among other things, that while approaching a street car to board it she stepped into a hole, which gave her a severe jerk and injured her; that she phoned her doctor the next morning, but that he did not call until the next day; that in the meantime she endeavored to sit up, but her back hurt her so she could not, and went to bed; that she was confined to her bed, and that her "condition was awful bad"; that at best she remembered she was absolutely confined to her bed for 6 weeks or more; that she then tried to get up for a few days and relapsed, and was sick in bed for several weeks again, not able to do anything; that her occupation was nursing the sick; and nursing was all she knew how to do, and on account of her injuries she had not been able to do any nursing since the accident; that she had not been able to do anything to earn money; that she did not know how long Dr. Marchman attended her, but thought it was until she went to California; that the doctor advised her to go to California, as a change of climate was the only chance for her, and that she left for California July 12, 1917. Appellee further testified that as a result of the accident she had some blue spots on the small of her back, and that after the third day of the accident she would suffer much pain whenever her bowels moved; that on an average of three or five times a week she would nearly faint when her bowels moved, but that such spells "got further apart" until she went to California; that her bowels were never that way before the accident, and that she never had the character or kind of pains in her back and hips before the accident that she suffered from after the accident. She testified on cross-examination:

"Before I made application for this insurance my health was considered extremely good, except about three spells I had in the last three or four years before I applied for this accident policy. As well as I remember I had two or three spells two or three years before this policy was issued, but the doctor said it was from overwork and straining and lifting patients."

The appellee's daughter testified that she was with her mother when the accident occurred; that when she looked around her mother was lying on the ground, and two young men helped her up; that her mother could not get on the car by herself, and she was assisted in boarding it. As to the effects of the accident on her mother, she said:

"Mother was unable to bear her weight on her limbs at all, and we got home about 11 o'clock. Between 2 and 3 o'clock she woke me up, suffering intense pain, and I called for the doctor, and he said he would be out, and for two or three consecutive hours I rubbed her limbs with camphor and liniment, and her back was hurt. She will do anything she can, but next morning she could not get up, and I think it was about 11 o'clock when the doctor came and examined her and gave her some medicine and relieved her pain. After that it was weeks before she could do anything. Three days after the doctor came the next time I was rubbing her back, and, noticing her back, it was perfectly blue for three or four inches, and her ankle and hip joint were strained. * * * Her hip was swollen and her ankle blue."

This witness further testified that her mother wasn't able to stay up, and wasn't able to work; that her mother went to California, and was gone 5 weeks and came back but still was not able to do her housework, but was a good deal better; that she had not performed any of her outside duties since the accident, and had not been able to do anything except her own housework. This witness further said that she knew her mother's condition before the accident; that up to the time of the accident her mother had always been able to nurse, and if she was not nursing she would be sewing, or something like that, and "that prior to the accident she did not have the same character of symptoms;

and was not affected the same way as she was after the accident."

Dr. R. J. Gauldin, a witness called by the appellant, testified that he was called to attend the appellee, and made an examination of her in company with Dr. Marchman on March 28, 1917; that at that time he found the appellee in a convalescing condition; that apparently she was not suffering from anything at that time; that from information received from Dr. Marchman appellee had received an injury some weeks before he saw her—

"and that this condition was due to the injury she had received; that the complication following that injury was the result of a recurrent attack which Dr. Marchman stated she had of salpingitis; that salpingitis is inflammation of the inner Fallopian tube and ovarian tube, like inflammation of the Eustachian tube; or in any of the ovarian body; that salpingitis of the ovaries or of the Fallopian tubes would be impossible for a man to have, but he can have salpingitis, but of course not in the parts named. He can have the same kind of an inflamed condition in other parts of the body. What she was suffering from was a disease not common to both sexes."

This witness further testified that—

Salpingitis "would be a disease common to both sexes, provided it affected organs that both sexes had. From a generic standpoint, the name itself is common to both sexes. However, the organs affected are not common to both."

Dr. Marchman in his testimony expressed no opinion as to whether or not salpingitis was a disease common to both men and women, but testified fully in regard to the physical condition in which he found the appellee before and at the time he first called to see her after her alleged injury and during the time he visited her professionally. The opinion expressed by him as a medical expert was that the appellee, four or five years prior to the accident complained of in this action, was suffering from salpingitis, a chronic condition of both tubes and ovaries, and that the disease was chronic at the time she was hurt, and continued during the entire time he treated her after the accident. He said the appellee complained of one of her limbs; that she suffered from pain in her limb; that from the examination he made it was his opinion that appellee would not have been disabled by the accident; that by this he meant that she would have been for the time being; that he thought appellee would have been disabled from the strain in her hip and back; that "those causes generally hurt them for about 6 weeks, although they are in bed." He further said he thought that if appellee had not had salpingitis the strain to her hip and back would have given her more or less trouble for 6 weeks; that he would say she would have been up and around; "possibly she

would have pains enough to keep her away from her work probably for 6 weeks." He further testified that the last time he examined the appellee was on March 27, 1917, and that she was still disabled; that on that date her disability was from that old chronic condition of salpingitis; that "from the time she had this accident up to the time I saw her last her disability never did result wholly from the accident"; that the "chronic salpingitis, the double salpingitis, contributed to it."

[2] The foregoing statements of and quotations from the testimony are sufficient, we believe, to show the correctness of our conclusion that the questions in the case were issues of fact to be determined by the jury, and not issues of law to be decided by the court. The court will not take the case from the jury simply because the evidence preponderates, or even greatly preponderates, in favor of the defendant. To justify such course, as has often been said, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it; that is, the "judge takes the case from the jury only when it is susceptible of but one just opinion." As indicated, such is not, in our opinion, the character of the evidence here. No matter what may have been the conclusions of this court had we been called upon, as was the jury, to decide the issues to which the evidence relates, still we are constrained to say that the jury was justified in finding upon the testimony of the appellee and her daughter that appellee, as a result of the injury sustained by her as alleged, was disabled, solely for the time claimed by her, by such injury from performing every duty pertaining to her business and occupation.

According to their testimony the appellee, immediately following the accident on March 17, 1917, and until July 12, 1917, the date she says she went to California at the instance of her physician, Dr. Marchman, was wholly unable as a result of her injuries to perform any of her duties. At least the jury was authorized to so find from their testimony. Appellee testified, in effect, that before she made application for the insurance in question her health was extremely good, except for "three spells" she had during the three or four years next preceding the issuance of the policy, and that the doctors said the "three spells" she had, which were in the nature of nervous breakdowns, were due to overwork and straining in lifting patients in performing her duties as a nurse; that as a result of the accident she had some blue spots on the small of her back, and that when her bowels would move it caused her "exceeding pain"; that so severe was this pain she nearly fainted with every recurrence of it. She further said that she never had any such pains when her bowels moved, and never had the character of pains in her back and hips

before the accident as she experienced after it occurred.

In addition to the recited testimony of the appellee her daughter, Miss L. A. Weaver, testified, among other things, that she had been with her mother and was bound to observe her condition: that prior to the accident her mother "did not have the same character of symptoms, and was not affected the same way as she was after the accident, and that prior to the accident she considered the general condition of her mother's health very good. In the state of the evidence, as pointed out, and especially since, according to the testimony of the appellee and her daughter, appellee had not experienced, prior to the accident, the character of pains, symptoms, and suffering which she did after the accident, we are not prepared to hold, notwithstanding the testimony of Drs. Marchman and Gauldin, that the jury was without any evidence upon which to base their conclusions that the appellee had not, within five years prior to the date of her application for the policy of insurance sued on, suffered with chronic salpingitis, and that she was wholly disabled and prevented solely by the injury she sustained in the accident in question from performing any and every duty pertaining to her business and occupation, and for such length of time as authorized the judgment rendered in her favor. We do not think it was unreasonable for the jury to conclude, from the testimony of the appellee and her daughter to the effect that appellee had not experienced the character of pains, symptoms, and suffering before the accident which she did after it, and which followed immediately upon the happening of the accident, that she had not theretofore been afflicted with salpingitis, but that such disease may have been produced by the injuries she sustained in the accident, or that if she had been suffering from salpingitis prior to the accident it had nothing whatever to do with her disability to perform the duties of her occupation. Dr. Gauldin testified that when he saw appellee on the 27th day of March, 1917, about six weeks after the accident, she was convalescing, and so far as the disease of salpingitis was concerned there was no reason why she should be confined to her bed at all. This witness further stated, in substance, that from information he got from Dr. Marchman the appellee had received an injury some weeks before he saw her, and that her condition was due to that injury.

The policy sued on insures against loss of life or limb, etc., resulting directly and independently of all other causes from a bodily injury which is effected accidentally, etc., and against loss of time, resulting either from such injury or from bodily disease or illness which is common to both sexes, in the sum of $10 per week, called "weekly indemnity," and appellant contends that salpingitis is not a disease common to both sexes, therefore the appellee is not entitled to recover for disability resulting from the disease, "with which she suffered following the accident," which was salpingitis, and if she is entitled to recover at all, it must be under other provisions of the policy promising indemnity for disability resulting from bodily injury which she claims to have sustained.

[3] The question here then is: Was the disease salpingitis, with which appellant claims the appellee was suffering, one common to both sexes, within the meaning of the policy? This question, we conclude, should be answered in the affirmative. Dr. Marchman expressed no opinion upon the question, and the only testimony we have to guide us is that of Dr. Gauldin. He said, as heretofore shown, that the complication following the appellee's injuries was a recurrent attack of salpingitis which Dr. Marchman said she had prior to the accident; that is, inflammation in the inner Fallopian tubes and ovarian tubes, like inflammation of the Eustachian tubes or any of the ovarian body; that salpingitis of the ovaries or of the Fallopian tubes would be impossible for a man to have, but he can have salpingitis, but of course not in the parts named. He can have the same kind of an inflamed condition in other parts of the body. This witness further said that what appellee was suffering from was a disease not common to both sexes, but added that salpingitis "would be a disease common to both sexes, provided it affected organs that both sexes had; that from a generic standpoint the name itself is common to both sexes. However, the organs affected are not common to both." As will be noted, salpingitis is an inflamed condition of the parts affected. It may be an inflamed condition of the ovarian tubes, the Fallopian tubes, or other parts of the body of a woman, and of such parts of a man's body subject to such condition possessed by him, and, as said in Shuler v. American Benev. Ass'n, 132 Mo. App. 123, 111 S. W. 618—

"the fact that it at times shows itself in an organ possessed by women and not by men does not make it a disease peculiar to women, for it could not be peculiar to women unless men are immune from its ravages."

Likewise, as the court expressed itself in the case cited, we think the correct interpretation of the provision of the contract referred to, which in effect, exempts the appellant from liability for sickness caused by diseases not common to both sexes, covers only such sickness or disease as women have and from which men are immune. It follows, we think, that if it be conceded that the disability of the appellee resulted from the disease described, such disease was, within the meaning of the policy sued on, a "disease common to both sexes," and covered by the insurance.

[4] The issue that the disability of the appellee resulted from disease, and not from the

accident, and that such disease was not common to both sexes, and therefore not covered by the policy, and such issue not having been submitted to the jury, and no request having been made for its submission, and there being evidence from which the court or jury could have found that the disease in question was one common to both men and women, it will be presumed under the statute that such issue was determined by the court in favor of the appellee, and so as to support the judgment rendered.

Our conclusion is that no reversible error appears, and that the judgment should be affirmed. It is therefore accordingly so ordered.

Affirmed.